WILLIAM S. VAN CLIEF, trustee, complainant-respondent,

*v.*

FRANK MELVILLE et al., defendants-appellants.

[Argued December 1st, 1910.   Reargued June 30th, 1911.   Decided November 20th, 1911.]

A corporation in financial straits executed a mortgage on all its property to trustees to secure all creditors who should assent to its terms before a certain date and extend the time of payment of their claims; the mortgage recited that it was given only upon the assent and extension of time by creditors owning seventy-five per cent. of the claims; additional advances of moneys to be made by or through the trustees were also secured by the mortgage as a first lien; the trustees were given full discretion and authority to disburse the moneys so advanced; the business of the corporation was to be conducted under their oversight and their expenses were to be a first lien; some creditors did not assent; a receiver was afterward appointed for the corporation, and upon a foreclosure by the trustees, filed an answer setting up the invalidity of the mortgage under section 12 of the statute of frauds.—*Held*, that the discretion reposed in the trustees as to the disbursement of moneys advanced by or through them was so broad as to evince an intent to hinder, delay and defraud creditors, and that the mortgage was invalid even as to the advances.

On appeal of Thomas G. Haight, receiver, from a decree of the court of chancery advised by Vice-Chancellor Walker.

The bill in this case was filed to foreclose a mortgage given by the Frank Melville Amusement Company and by Frank Melville and wife to William S. Van Clief, the complainant, and Albin Harry Cortright as trustees. The receiver of the Frank Melville Amusement Company filed an answer setting up that the mortgage was void under the sixty-fourth section of the Corporation act and the twelfth section of the statute of frauds. The facts are as follows:

In 1907, the amusement company conducted what was apparently a profitable enterprise, but in August of that year was in financial straits, probably because of the fact that the receipts, while showing a profit over the running expenses, were not sufficient to pay the cost of the plant. Suits were pending and lien claims were filed, including lien claims by Van Clief and by Cortright. These two lien claims were filed when they were, for the purpose of inducing a more favorable settlement of a large claim then in the hands of an attorney for collection. Negotiations and creditors' meetings followed, as a result of which the mortgage in suit was given. It bears date October 21st, 1907, a few days after the scheme had been approved at a meeting of creditors, but it was not acknowledged until January 6th, 1908. The delay seems to have been due to the effort to secure the assent of creditors of the amusement company, in accordance with the provisions of the mortgage. The total amount of claims, as appears by a statement assented to both by the amusement company and by the trustees named in the mortgage, including the complainant, was $72,119.98, but of this amount $15,292 claimed by Cortright himself was proven fictitious; the valid claims amount to $56,827.98. Slightly over seventy-five per cent. of that amount assented. The provisions of the mortgage are peculiar. It recites the willingness of the mortgagors to give security for their debts "upon said creditors accepting such security, and in consideration thereof giving an extension of time until October 1st, 1908;" conveys all the property of the amusement company and also property used in connection with the

12

enterprise, which in equity belonged to the company, though the title was in Melville; provides that it is given only upon the receipt from creditors owning seventy-five per cent. of the claims of extensions of payment to October 1st and the assent of the said creditors to the terms of the mortgage, and that the remaining twenty-five per cent. may share in the benefits by executing and delivering to the mortgagors like extensions and assents on or before February 6th, 1908, being one month from the date when the mortgage was acknowledged. It provides for additional advances to the extent of $10,000, to be made only through the trustees. The advances are to be applied as the trustees direct; they are given full discretion and authority with regard to all disbursements, and the loans and advances are to be a first lien on the mortgaged premises prior and paramount to the lien of the other claims. The mortgagors are to remain in full possession of their park property, business, franchises and appurtenances, to manage and control the same and receive and control all rents, royalties, earnings, revenues and income thereof and therefrom in the same manner and with the same effect as if the mortgage had not been made, with the right to make such changes and alterations as they may deem best. The trustees are authorized after May 1st, 1908, that is, after the beginning of the next season for such amusements as the company conducted, to appoint a bookkeeper; the books are to be at all times open to inspection and audit by the trustees. There are provisions for the advancement by the trustees of the expenses necessary to keep the enterprise going, which are to be a first lien upon the mortgaged property.

*Mr. Elmer W. Demarest (Messrs. Roberson & Demarest,* on the brief), for the complainant-respondent.

*Mr. Richard Boardman (Messrs. Condict, Condict & Boardman, Mr. Robert S. Hudspeth* and *Mr. George H. Peirce,* on the brief), for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The learned vice-chancellor held that the mortgage was invalid as far as it attempted to secure the then existing debts of the amusement company, but that, although the company was insolvent, the mortgage was valid security for the subsequent advances, notwithstanding section 64 of the Corporation act, for the reason that the trustees, particularly Van Clief, who advanced the money, had no notice of the insolvency. He did not consider whether or not the mortgage was invalid under section 12 of our statute of frauds. If we thought it necessary to consider the effect of section 64 of the Corporation act, we should have some difficulty in finding, as the vice-chancellor did, from the facts in the case, that Van Clief was without notice of the insolvency; but it is unnecessary to pass upon that question, for the reason that the case can be disposed of under the twelfth section of the statute of frauds. The above recital of facts suffices to show that as to antecedent creditors the case comes within the rule of *Owen* v. *Arvis, 26 N. J. Law (2 Dutch.) 22*, and *National Bank of the Metropolis* v. *Sprague, 21 N. J. Eq. (6 C. E. Gr.) 530.* Notwithstanding what Vice-Chancellor Pitney said in *Sipley* v. *Wass, 49 N. J. Eq. (4 Dick.) 463* (at *p. 473*), the authority of these cases has not been at all shaken by the later decisions of *Muchmore* v. *Budd, 53 N. J. Law (24 Vr.) 369*, and *Clinton Bank* v. *Cummins, 39 N. J. Eq. (12 Stew.) 577. Muchmore* v. *Budd* turned upon the question whether the bill of sale amounted to an assignment for the benefit of creditors within the meaning of our statute relating to such assignments, and it was held it did not. If not, the case was an ordinary one of preference of creditors. In neither that case nor in *Clinton Bank* v. *Cummins* was the question of fraudulent intent involved. In the present case, it was clearly the intent of the parties to the mortgage that creditors who did not assent should be deprived of any right to share in the security, which covered all the property of the amusement company, so that the effect was that creditors unwilling to assent to the terms proposed by the debtors were shut out. This was exactly the scheme condemned in *National Bank of the Metropolis* v. *Sprague.* The present case

differs in that the mortgage secures future advances, and was sustained only to that extent. The reargument was directed upon the point whether a mortgage bad in part because in contravention of the statute of frauds could be sustained in part by a court of equity in view of the plain language of the statute declaring that "a conveyance contrived in fraud, covin or collusion with intent to hinder, delay or defraud creditors of their lawful actions should be utterly void and of no effect." Upon further consideration, we think we need not pass on that question. The mortgage shows upon its face that the provisions as to future advances were contrived to defraud creditors of their lawful actions. It provides for advances not exceeding $10,000, to be made in installments as the same may be approved by the trustees from time to time for the maintenance of the business, for inn and tavern or restaurant and beer saloon licenses, rent, water taxes and other taxes, wages or arrears thereof, stock in trade, insurance of buildings and the general carrying on and safeguarding of the properties and business between its date and the ensuing 1st of June. The trustees agree to advance for such purposes at least $5,000 in such installments and at such times as to them and Melville shall seem proper; any sums advanced by them or other persons are to be applied as they direct, and they have full discretion and authority with regard to all such disbursements. These provisions are so broad as to authorize the trustees to advance money and apply it to the payment of pre-existing debts at their discretion. The object of the provision seems, from the testimony, to have been to permit the trustees to pay small creditors who were pressing for payment and annoying the management of the enterprise. Payments of this kind were made. Such a provision, while it may have been at the time intended only for the benefit of small creditors, was susceptible of being used for the benefit of Van Clief himself, and the effect of vesting such discretion in the trustees was to make it possible for them to substitute the first lien which the mortgage gave to the advances, for the inferior lien that favored creditors might otherwise have, merely by using the money to pay those creditors. A better scheme to hinder, delay and de-

fraud creditors of their lawful actions cannot readily be devised. The assenting creditors no doubt thought that the trustees intended that the advances should be used for the purpose of carrying the enterprise through to another season for outdoor amusements, with the hope that it would prove profitable enough to enable the corporation to pay its debts, but the discretion reposed in the trustees was much broader than that. Under *Muchmore* v. *Budd* this scheme cannot be called a general assignment, but, in substance, it is an arrangement by which the corporation appoints its own receivers, authorizes them to continue the business and create a first lien upon the property prior to the claims of existing creditors and use the proceeds of the new loans for such purpose as they deem best. As to non-assenting creditors such a scheme is illegal, and is within the reason that led the court to condemn the mortgage in *National Bank of the Metropolis* v. *Sprague.*

It is urged that the state of the record prevents creditors from profiting by this appeal because a decree *pro confesso* has been taken against them in the court of chancery. It is conceded that there were creditors who did not assent to this scheme; the receiver represents them; he raised the issues by proper pleading in the court of chancery, and is entitled to press the objections to the mortgage in this court. The fact that some of the creditors, whose counsel signed the brief in behalf of the appellant, assented to the arrangement, is of no moment. The receiver is the appellant, representing the rights of non-assenting creditors. The question of equities that may have arisen by reason of the assent of many creditors to the scheme is not now before us. That will naturally arise in the court of chancery upon the distribution of the fund now in the hands of the receiver.

For the reasons stated, the decree is reversed and the record remitted to the court of chancery for further proceedings in accordance with this opinion. The decree in favor of the Commonwealth Roofing Company is affirmed for the reasons stated by the vice-chancellor.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—12.